UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Raquel Rodriguez, | No. C 08-3982   JL |
| Plaintiff, | **ORDER TO STAY CASE AND COMPEL ARBITRATION (Granting Docket # 11)** |
| v. | |
| Michael Sim, et al., | |
| Defendants. | |

### I. Introduction

Plaintiff Raquel Rodriguez filed a wrongful termination and employment discrimination claim pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, among other related claims, against her former employer, Defendant Michael Sim, the current owner of Eden Villa-San Francisco. In lieu of an Answer, Defendant moved to compel arbitration under the Federal Arbitration Act, 9 U.S.C. §§ 1-16, pursuant to an alleged arbitration agreement between the parties. Plaintiff then requested an evidentiary hearing to clarify certain material issues of fact.

The Federal Arbitration Act does not confer federal question jurisdiction under 28 U.S.C. § 1331; rather, there must be an independent basis for jurisdiction. 9 U.S.C. § 4; *Volt Info. Sciences, Inc. v. Bd. of Tr. of the Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). In this case, the Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and §

1367, because the underlying claim, Plaintiff's employment discrimination claim, arises under federal law. All parties consented to this Court's jurisdiction as provided by 28 U.S.C. § 636 ©).

**II.     Relief Requested**

Defendants move to compel arbitration on the basis that the agreement to arbitrate employment disputes is valid and enforceable against Plaintiff. Ms. Rodriguez was a caregiver at Eden Villa, a senior care residential home in San Francisco owned by Defendant Michael Sim, until she was terminated in January 2008. She filed a civil rights claim against Sim and Does 1-25, pursuant to 42 § U.S.C. 1981, alleging that she was harassed and then wrongfully terminated as a result of racial discrimination. Her primary complaints are against two of her former supervisors, Harlyta Rabor, and Milagros Rioldan. Rabor testified at the evidentiary hearing.

In his Motion to Compel Arbitration, Sim alleges that the Arbitration Agreement between Rodriguez and Eden Villa is valid and enforceable because: 1) Rodriguez was given a personnel manual containing the Arbitration Agreement to take home and review; 2) Rodriguez was informed that all disputes arising from her employment would be subject to arbitration; 3) Rodriguez did not ask questions or request a translation; and 4) Rodriguez signed the Arbitration Agreement after having had time to read it. (Def.'s Reply 1:25-26, 2:1-5; Rabor Decl. ¶ 4-7.) Sim further argues that the Arbitration Agreement was voluntary, and that Rodriguez was paid $20 as consideration in exchange for her agreement to arbitrate. (Rabor Decl. ¶ 5.)

Ms. Rodriguez contends: 1) that she was misled by Rabor who told her that she was signing an acknowledgment of receipt of the personnel handbook, and never attempted to alert her to the Arbitration Agreement, and 2) that the agreement is unconscionable. She argues that she should not be bound by the agreement and that Defendants knew or should have known that she could not read it on her own, because of her limited English skills. (Pl.'s Opp. 2:1-7.)

The Court held an evidentiary hearing at which both sides presented evidence and witnesses. Patrick Ray Kitchin appeared for Plaintiff. Stephen Lyle Porter appeared for Defendants. The parties submitted post-hearing briefs and the matter was submitted.

### III.   Analysis

#### A.   Standard for Compelling Arbitration

"[A]rbitration is a matter of contract."  *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)).  The Federal Arbitration Act provides that arbitration agreements generally "shall be valid, irrevocable and enforceable."  9 U.S.C. § 2 (2002). However, when grounds "exist at law or in equity for the revocation of any contract," courts may decline to enforce such agreements.   9 U.S.C. § 2*; Ingle*, 328 F.3d at 1170.

Generally applicable defenses to contract such as fraud, duress, or unconscionability invalidate arbitration agreements.  *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) (interpreting the language of 9 U.S.C. §2). Because of the strong policy favoring arbitration, doubts will be resolved in favor of the party moving to compel arbitration.  *Moses H. Cone Mem. Hosp. v. Mercury Const., Corp.*, 460 U.S. 1, 24 (1983).

To evaluate the validity of an arbitration agreement, federal courts "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

#### B.   The Arbitration Agreement is Interpreted According to California Contract Law

When a petition to compel arbitration, subject to the United States Arbitration Act, 9 U.S.C. §§ 1-16, is filed and accompanied by prima facie evidence of a written arbitration agreement, the court itself must determine whether the agreement exists, Cal. Code Civ. P. §§ 1281.2, 1290.2, and if any defense to its enforcement is raised, whether it is enforceable, *Rosenthal v. Great W. Fin. Sec. Corp.,* 14 Cal. 4th 394 (1996).  A petition to compel arbitration is in essence a suit in equity to compel specific performance of a contract.  *Id.*  Where there are sharply contrasting factual accounts, the better course is for

the trial court to hear oral testimony and allow the parties the opportunity for cross-examination. *Rosenthal v. Great Western Fin. Securities. Corp. Id.*

In this case, Defendants proffer evidence of a written Arbitration Agreement. As Plaintiff alleges that she did not knowingly consent to the agreement to arbitrate, there is an issue as to whether a valid agreement was formed. Plaintiff has also raised the defense of unconscionability, a valid defense to contract under California law, *see Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83 (2000).

Whether a clause or a contract is unconscionable requires a two pronged showing that the clause or contract is both (a) procedurally unconscionable and (b) substantively unconscionable. *Armendariz v. Foundation Health Psychcare Services, Inc.,* 24 Cal.4th at 114; *Soltani v. Western & Southern Life Ins. Co.* 258 F.3d 1038, 1047 (9th Cir. 2001) [shortened limitations period not unconscionable; even assuming procedural unconscionability, the "clause is not substantively unconscionable and is therefore enforceable"]. The failure of either prong of the test defeats a claim of unconscionability.

Whether the Arbitration Agreement is substantively unconscionable is a legal issue for the Court to decide based upon the terms of the Arbitration Agreement. Absent substantive unconscionability, the Arbitration Agreement cannot be unconscionable, regardless of whether it is a contract of adhesion or was offered on a "take it or leave it basis."

In *Belton v. Comcast Cable Holdings, LLC* 151 Cal.App.4th 1224, 1245 (2007), the plaintiff challenged Comcast's practice of only providing music over its cable service when bundled with its cable television service. The plaintiff was blind and had no use for the television service, but Comcast would not provide the music service without the subscriber purchasing the television service. While the court discussed at length why the bundling requirement was not procedurally unconscionable (because there was neither surprise over the bundling requirement nor was Comcast the only source for FM music), it more importantly for this case held that even if there were procedural unconscionability, the

challenge failed because there was no substantive unconscionability, and that without satisfying the substantive prong, any evidence on the procedural prong was immaterial:

> [A]ny factual dispute about the practicability of the alternative ways of listening to FM radio or music is immaterial because the contract term must be both procedurally and substantively unconscionable. We are satisfied that the requirement that plaintiffs purchase the basic cable tier did not "shock the conscience" simply because it included television programming they did not want. A provision is substantively unconscionable if it " 'involves contract terms that are so one-sided as to "shock the conscience," or that impose harsh or oppressive terms.' "'

(*Morris v. Redwood Empire Bancorp,* 128 Cal.App.4th 1305, 1322 (2005).

As the court in *Belton* discussed, the definition of substantive unconscionability is a contract or clause that is so one-sided as to "shock the conscience" or impose "harsh or oppressive terms".

This standard is far higher than merely being "unreasonable." *Morris v. Redwood Empire Bancorp*, 128 Cal.App.4th 1305, 1317 (2005), cited in *Belton,* involved the imposition of a $150 termination fee when a merchant cancelled his credit card processing agreement. The court, in ruling that the merchant's agreement was not unconscionable, observed that:

> A provision is substantively unconscionable if it "involves contract terms that are so one-sided as to 'shock the conscience,' or that impose harsh or oppressive terms." (*24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1213, 78 Cal.Rptr.2d 533.) The phrases "harsh," "oppressive," and "shock the conscience" are not synonymous with "unreasonable." Basing an unconscionability determination on the reasonableness of a contract provision would inject an inappropriate level of judicial subjectivity into the analysis.

*Id.,* at 1322.

Applying these principles, arbitration provisions which apply equally to both parties, as here, are not substantively unconscionable. *Armendariz v. Foundation Health Psychcare Services,* 24 Cal.4th at 116-118; *Klussman v. Cross Country Bank,* 134 Cal.App.4th 1283, 1295 (2005) , citing *Szetela v. Discover Bank,* 97 Cal.App.4th 1094, 1100-1101 (2002). As a matter of law, there cannot be substantive unconscionability unless there is an absence of mutuality in the Arbitration Agreement. As *Armendariz* termed it, arbitration agreements

between an employer and employee must have a modicum of bilaterality to be conscionable. 24 Cal.4th at 118. That is, substantive unconscionability is found only where there is no mutuality, such as where the employer is exempt from the obligation to arbitrate for "other equitable relief" but the employee is not. *Davis v. O'Melveny & Myers*, 485 F.3d 1066 (9th Cir.2007); *Mercuro v. Superior Court*, 96 Cal.App.4th 167 (2002); *Stirlen v. Supercuts, Inc.*, 51 Cal.App.4th 1519 (1997).

### C. The Arbitration Agreement is the Same for Both Parties

The decision in *Cole* provides five minimum requirements for the lawful arbitration of a claim of violation of statutory employment civil rights pursuant to a mandatory employment arbitration agreement, such as Plaintiff filed in this case. Such an arbitration agreement is lawful if it "(1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum. Thus, an employee who is made to use arbitration as a condition of employment 'effectively may vindicate [his or her] statutory cause of action in the arbitral forum.'" *Cole v. Burns Intern. Sec. Services*,105 F.3d 1465, 1482 (D.C. Cir.1997)

The Arbitration Agreement in this case provides that both employee and employer give up their right to a jury trial and agree to arbitrate all employment-related claims, under state and federal civil rights statutes including the Civil Rights Act and the Fair Employment and Housing Act. The agreement does not apply to claims brought under the National Labor Relations Act, to medical and disability benefits claims under the California Workers' Compensation Act, nor to Employment Development Department claims.

The arbitration shall be conducted in compliance with the Federal Arbitration Act and the California Code of Civil Procedure, and the FAA's mandatory and permissive rights to discovery. The employer bears any cost of the arbitration that the employee would not have incurred had the claim been filed in court.

In addition to the requirements imposed by law, any arbitrator shall be a retired California Superior Court judge and shall be subject to disqualification on the same grounds as a judge of such a court. All rules of evidence shall apply to the arbitration proceedings. Resolution shall be based solely on the law governing the claims and defenses pleaded. All communications regarding the arbitration shall be privileged as provided by California Civil Code section 47(b). The arbitrator shall submit a written award. The parties then have ten days to appeal to a second arbitrator, who shall proceed according to the law and procedures applicable to appellate review by the California Court of Appeal of a civil judgment following trial. Any award is subject to limited judicial review pursuant to the California Arbitration Act.

This Court applies the minimum requirements articulated by the court in the *Cole* case and finds that the Arbitration Agreement in this case more than satisfies those requirements.   The agreement provides for neutral arbitrators, provides for more than minimal discovery, requires a written award, provides for all of the types of relief that would otherwise be available in court, and does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum. *Cole v. Burns Intern. Sec. Services*,105 F.3d 1465, at 1482.

### D. The Arbitration Agreement is Mutual, and Neither Substantively Nor Procedurally Unconscionable

This Court finds that the Arbitration Agreement is mutual in this case, with all provisions applying equally to both parties, and, therefore, is not substantively unconscionable. See *Little v. Auto Stiegler, Inc.,* 29 Cal.4th 1064, 1075 (2003) [severing a one-sided appeal process and enforcing an otherwise mutual arbitration agreement]. As the court stated in *24 Hour Fitness, Inc. v. Superior Court* 66 Cal.App.4th 1199, 1213 (1998):

> [h]ere, in contrast, the arbitration clause applies equally to employer and employee; allows both parties substantially the same array of discovery procedures available in civil actions; and does not create an imbalance in remedies potentially available to either side. In short, Munshaw has failed to show the existence of any triable issue of substantive unconscionability."

(emphasis added)

See also *Arriaga v. Cross Country Bank,* 163 F.Supp.2d 1189, 1195 (S.D.Cal.,

2001) , stating: "The arbitration clause in the present case is not one-sided because it requires both sides to submit all claims they may have against one another to the NAF."

> The reciprocal rule exists as to procedural unconscionability. No matter how oppressive the clause or contract is, it will be enforced where procedural unconscionability is lacking: "a conclusion that a contract contains no element of procedural unconscionability is tantamount to saying that, no matter how one-sided the contract terms, a court will not disturb the contract…it is not the court's place to rectify these kinds of errors or asymmetries." *Gentry v. Superior Court,* 42 Cal.4th 443, 470 (2007).

### E. The Issue is Whether Plaintiff was Defrauded into Signing the Agreement

The Court finds that the primary issue is whether Plaintiff was defrauded into signing the Arbitration Agreement. Fraud is a generally applicable defense to contract. Cal. Civ. Code § 1689 (2008). California law distinguishes between fraud in the "inception" of a contract and fraud in the "inducement" of a contract. *Rosenthal*, 14 Cal. 4th at 415. Where a party's apparent assent to a written contract is negated by fraud in the inception, no arbitration agreement was formed. *Id.* at 417. Fraud in the inception is an issue for the trial court, whereas fraud in the inducement --- where a party intends to assent to an agreement but there is some other misrepresentation --- is an issue for arbitration rather than for the court, because there exists intent to enter into an agreement. *Id.* at 415. Here, because Rodriguez argues that "she never even knew that what she was signing was even a contract," it appears that she alleges fraud in the inception, which is a proper issue for the court to decide.

Plaintiff argues that her consent to the Arbitration Agreement was obtained by false pretenses, but in her pleadings fails to contradict the evidence which weighs against her on the motion to compel arbitration— she had the opportunity to read the agreement (or have it explained or translated, if needed), but she failed to avail herself of that opportunity. "[F]raud does not render a written contract void where the defrauded party had a reasonable opportunity to discover the real terms of the contract." *Rosenthal v. Great Western Financial Securities Corporation*, 14 Cal.4th 394, 419-420 (1996).

Having the written Arbitration Agreement at home, with her English-speaking son, Mario Nunez, who actually assisted her in filling out the certification of the Arbitration

Agreement, Plaintiff had a reasonable opportunity to discover its terms. Consequently, she cannot void the contract. Plaintiff, through counsel, must have been aware of this fatal defect in her legal position, which could explain why at first there was no testimony from her son about his involvement in the execution of the Arbitration Agreement. When asked whose handwriting was on the signature page, Plaintiff testified "I don't remember" (59:9-21).[1] Mario Nunez was not listed as one of her witnesses. Her papers and testimony made no effort to explain this handwriting.

Defendant at the evidentiary hearing presented a forensic handwriting expert, Sean Espley, to reveal the son's role. Only after his handwriting was identified, did Mario Nunez appear in court to testify and acknowledge that he had filled out the certification form. Plaintiff's English-speaking son could have answered any question she had regarding the Arbitration Agreement if she had asked. (159:24 -160:1) The law does not require a party to read a contract or demonstrate a high level of comprehension in order to be bound, and the other party cannot coerce a reading of its terms. The law requires only that Plaintiff have had the opportunity to learn of the terms. The Court finds that in asking for her son's assistance in signing the Arbitration Agreement, Plaintiff must concede that she had the opportunity to learn anything she wanted about the contract. Plaintiff ignores this unavoidable conclusion, which is fatal to her effort to void the contract.

**IV. The Evidence at Hearing Did Not Establish any Fraud by Defendants**

Plaintiff failed to meet her burden of proof either in her pleadings or at the evidentiary hearing. To the contrary, the evidence established that the Arbitration Agreement was called to Plaintiff's attention and that she was told to take it home and read it. She was also told that it provided for all disputes to be decided by a retired judge. She was not allowed to sign it on the spot without availing herself of the opportunity to read it. (125:1-127:15)

Plaintiff was given the Arbitration Agreement together with other documents related to her employment and her job as a caregiver. Harlyta Rabor testified how the packet was assembled and how each document was explained to employees, with the signature pages

---

[1] Transcript of Evidentiary Hearing of January 21, 2009, Docket # 42.

tabbed. (Ex. J.) Ms. Rabor showed how she explained each document to Plaintiff, asked if she had questions, and told her to take the documents home to read before signing. Plaintiff did not have any questions or ask for any translation or other assistance. (125:1-127:15) The tabbed materials in the packet could not have been signed in "about 12 seconds", as Plaintiff claimed. (31:20) If the Arbitration Agreement could have been signed in a few seconds, there would have been no reason for Plaintiff to take the Arbitration Agreement home, which she admits she did. To the contrary, both the employee packet and Ms. Rabor's demonstration of her custom of explaining its content to company employees, including Plaintiff, shows that its employees were given all of the necessary employment materials and an opportunity to read them or obtain clarification before signing. The process itself was documented, as Plaintiff confirmed in her own handwriting. (Ex. G - Employee Orientation checklist)

    The Court adopts the most reasonable interpretation of the evidence, which is that for the most part the Eden Villa-SF witnesses told the truth but that in many instances Plaintiff did not. All of the employment documentation is consistent with Ms. Rabor's testimony. The numerous documents could not possibly have been signed in 10-12 seconds, as Plaintiff contends. The involvement of Plaintiff's son, Mario Nunez, in filling out the certification form indicates that Plaintiff signed the Arbitration Agreement at home, not after returning it to Ms. Rabor unsigned, as Plaintiff testified. The packet of materials had the signature pages tabbed; there was no reason for Plaintiff to ask her son where she was supposed to sign, as the signature pages were identified. The only reason for Plaintiff and her son to have had any discussion about the Arbitration Agreement was if Plaintiff was signing it at home, before returning it to her employer.

### V.     Plaintiff's Testimony was Not Credible on Key Issues

    Plaintiff gave contradictory or later-disproved testimony on numerous subjects. First, she claimed that Michael Sim filled out the employment application (Ex. D - Personnel Record) for her. (35:7-25) This testimony was successfully contradicted by forensic expert Sean Espley, after which Plaintiff's son conceded that he, rather than Plaintiff, had filled it out. (161:21-162:10) As noted above, Plaintiff at first claimed she didn't know who had filled

out the certification in the Arbitration Agreement. She called her son Salvador Nunez, as a witness, but not her son Mario Nunez. However, after Espley's handwriting analysis showed that someone else besides plaintiff had filled out the certification, Mario Nunez appeared and acknowledged his writing.

Plaintiff feigned confusion over simple English at the hearing, beginning with the clerk's initial asking of "your name". (21:19) She then began answering questions in English when her attorney suggested she do so. (22:16) In fact, the evidence showed that Plaintiff spoke, read and wrote English for six years at Eden Villa-SF. She could not have maintained her employment otherwise. She cared for an entire floor of elderly residents at night, only one or two of whom spoke Spanish. (36:16-38:1) Her testimony that she, the residents and other staff communicated by hand signals was not credible. (47:12-17, 79:9-20)

Plaintiff's claim of illiteracy in English was belied by her six-year employment, which required daily written and oral communications in English. (70:19-72:7) Plaintiff took training, including tests, in English, not just from Eden Villa-SF staff but also from outside trainers, such as the Menlo Park Fire Department course in first aid every two years, which included a written English test that Plaintiff passed. (120:1-122:22) Plaintiff spoke English with her co-workers regularly, and she had to read documents in English as part of her regular duties. (146:2-147:10, 151:16-154:12) Plaintiff read the San Francisco Chronicle on the night shift. (154:13-24) She borrowed the Personnel Manual from Carmen Ballesteros, the daytime receptionist, and read it to answer an employment question. (147:11-148:7) Plaintiff conversed regularly with Ms. Ballesteros, who is bilingual, but whenever there was a need to clarify something, Ballesteros would use English rather than Spanish to make sure that Plaintiff would understand. (146:19-147:10)

**VI. The Additional Legal Authorities Plaintiff Cites do Not Support Her Claims**

*American Heritage v. Lang*, 321 Fd.3d 533 (5th Cir. 2003) does not provide any new law on any issue presented by this motion. That case was brought under Mississippi law, which is irrelevant to the standards for rescission under California Civil Code Sec. 1689 and *Rosenthal, supra*. The Fifth Circuit remanded the *American Heritage* case for an

evidentiary hearing to determine if grounds existed to void the agreement based upon alleged fraud in the inducement. There was no discussion of the impact of the defendant's opportunity to read the agreement or have it explained to him.

Unlike this case, the defendant in *American Heritage* had asked for an explanation of the agreement but had been given false information. In this case, Plaintiff never asked for an explanation. Another case on which Plaintiff relies is also distinguishable. The case of *Three Valleys Municipal Water District v. E.F. Hutton & Co.*, 925 F.2d 1136 (9th Cir. 1991) involved only the question of whether fraud in the inducement of an arbitration clause was an issue for the court, as opposed to the arbitrator, to decide. It did not discuss the elements of the claim or the defenses thereto.

Plaintiff fails to distinguish *Morales v. Sun Constructors, Inc.*, 541 F.3d 218 (3rd Cir. 2008). The court there observed that arbitration agreements may be attacked on the same grounds that exist for revocation of contracts generally and noted the requirement of mutual assent to contract formation. Nevertheless, the Spanish-speaking employee in that case was bound by the arbitration agreement which he had signed even though he was unable to read it.

Plaintiff cites *Morales* to support her claim in this case, but she does so by omitting a critical passage from the case quoted there. The court in *Morales* quotes *Pimpinello v. Swift & Co.*, 253 N.Y. 159, 163, 170 N.E. 530 (1930), which stated that "[i]f the signer is illiterate, or blind, or ignorant of the alien language of the writing, *and the contents thereof are misread or misrepresented to him* by the other party ... unless the signer be negligent, the writing is void". *Morales*, 541 F.3d at 223 (emphasis in original). When Plaintiff quoted this same passage (at 6:23), she omitted the phrase "unless the signer be negligent." This is significant because she herself had more than one opportunity to receive an explanation of the agreement she was signing but neglected to ask.

Further, the passage quoted from *Pimpinello* was followed by footnote 1, in which the court in *Morales* distinguished the facts in that case from those in *American Heritage*, *supra*, where the employee had asked the other party to explain the documents he was being asked to sign. Again, Plaintiff chose to omit the discussion of *Pimpinello* by the court

in *Morales*, presumably because Plaintiff's failure to ask for an explanation of the Arbitration Agreement made her conduct akin to that of the parties in *Morales* and *Pimpinello*, and readily distinguishable from the employee in *American Heritage*.

### VII. There is No Legal Justification for Plaintiff's Conduct

Without citation to any legal authority, Plaintiff argues that she should be excused from the law applicable to other contracting parties. Eden Villa-SF had no obligation to provide a Spanish translation of the Arbitration Agreement when Plaintiff didn't ask for one. Plaintiff would not have been compelled to hire a translator, given her two sons and grandson who spoke English and wrote many letters for her. There were also several bi-lingual employees at Eden Villa-SF who could have translated for Plaintiff, if she had asked.

Plaintiff argues that her son did not have a legal duty to translate for her. This ignores the reality that her family members routinely translated for her, as evidenced by the letters written for her. Most significantly, Plaintiff had the opportunity to have the Arbitration Agreement explained by her son, regardless of whether he had a legal duty to do so.

On one hand, Plaintiff claims that she is so illiterate in English that she doesn't even understand when she is asked in English for her name (21:17-19, the first question asked by the Court's clerk at the evidentiary hearing). On the other hand, Plaintiff claims that she understood English well enough to know that Ms. Rabor misrepresented the Arbitration Agreement as a receipt for the Personnel Manual. Plaintiff cannot have it both ways. If she is illiterate, then she could not have been defrauded because she did not understand what she was told; however, she is bound by the terms of the contract she signed, under *Morales* (and cases cited in defendant's Reply Memo., ¶. 4-5). Under the ruling in *Rosenthal,* if she understood English so as to be the victim of fraud, then her negligence in not availing herself of the opportunity to read the agreement or have it explained bars her effort to void the contract.

Finally, Plaintiff's claim that she was intimidated by Ms. Rabor, a person who allegedly discriminated against her, ignores a critical fact—the Arbitration Agreement was signed in 2003, while Plaintiff alleged the discrimination occurred between 2005-2007.

Plaintiff could not have been intimidated by something that she would be unaware of for two years.

**VIII. Conclusion**

The Court finds that the Arbitration Agreement is not substantively unconscionable, which is determinative in this matter. Even if procedural unconscionability were an issue, regardless of where along the spectrum of "unfairness" Plaintiff stakes her claim--from not being provided a Spanish translation to an allegedly fraudulent description of the document as a mere receipt for a personnel handbook – Plaintiff loses. The evidence established that there was neither fraud nor procedural unfairness. She was given the opportunity to ask questions or seek clarification and declined to do so. She took the Arbitration Agreement home for several days. She had the opportunity to have it explained to her by her family members or co-workers. She didn't avail herself of any of those opportunities. That fact is established beyond any doubt in this case, and it is dispositive.

For all the reasons set forth herein and previously presented, and based upon the evidence at the hearing, this Court hereby stays the action and grants Defendants' motion to compel arbitration.

IT IS SO ORDERED.

DATED: April 10, 2009

_____
James Larson
Chief Magistrate Judge

G:\JLALL\CHAMBERS\CASES\CIVIL\08-3982\ORDER Grant 11.wpd